IzCARTER, C.J.
This is an appeal from a judgment denying a motion to compel arbitration of a claim for wrongful termination of employment, breach of contract, and tortious interference with business.
BACKGROUND
Plaintiff, Roy Gautreaux (Gautreaux), began working as an insurance salesman with appellants, Prudential Insurance Company of America, Prudential Insurance Company and Prudential Preferred Financial Services (Prudential), in 1989. Pruco Securities Corporation (Pruco) was a wholly-owned subsidiary of Prudential and was registered with the National Association of Securities Dealers, Inc. (NASD). Prudential marketed variable life insurance products and mutual funds through Pruco. As a prerequisite to becoming a representative of Prudential and Pruco, Gautreaux had to execute a Uniform Application for Securities Industry Registration or Transfer, also known as a Form U-4. NASD required execution of a Form U-4 by any person desiring to market variable life insurance products and mutual funds. Accordingly, Gautreaux executed a Form U-4 in August 1989.
The Form U-4 provided in pertinent part as follows:
I [Gautreaux] agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of [NASD] ... as may be amended from time to time.
The Form U-4 additionally provided as follows:
I agree to abide by, comply with, and adhere to all the provisions, conditions and covenants of the statutes, constitutions, certificates of incorporation, by-laws and rules and regulations of the states and organizations as they are and may be adopted, changed or amended from time to time ....
Therefore, the Form U-4 referred Gau-treaux to provisions contained in the NASD Code of Arbitration Procedure (the Code). Pursuant to section 10101 of the Code,[1] the following is subject to arbitration:
any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association, or arising out of the employment or termination of employment of associated person(s) with hany member, with the exception of disputes involving the insurance business of any member which is also an insurance company:
(a) between or among members;
(b) between or among members and associated persons;
(c) between or among members or associated persons and public customers, or others; and
(d) between or among members, registered clearing agencies with which the Association has entered into an agreement to utilize the Association’s arbitration facilities and procedures, and participants, pledgees, or other persons using the facilities of a registered clearing agency, as these terms are defined under the rules of such a registered clearing agency.
Section 10201(a) of the Code similarly provides as follows:
Any dispute, claim, or controversy eligible for submission under the Rule 10100 Series between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or termination of employment of such associated *923 person(s) with such member, shall be arbitrated under this Code, at the instance of:
(1) a member against another member;
(2) a member against a person associated with a member or a person associated with a member against a member; and
(3) a person associated with a member against a person associated with a member.
FACTUAL AND PROCEDURAL HISTORY
Gautreaux’s employment with Prudential was terminated in June 1995 for failure to produce. On June 18, 1996, Gautreaux filed a petition for damages for breach of contract and tort against Prudential in the Thirty-second Judicial District Court. In this petition, Gautreaux alleged that he was wrongfully terminated by Prudential; Prudential committed a breach of contract; and Prudential tortiously interfered with Gautreaux’s business. Relying on the mandatory arbitration clause contained in the Form U-4, Prudential filed a motion to compel arbitration, Gautreaux opposed the motion arguing: 1) Prudential was not a party to the Form U-4 and thus, could not enforce the arbitration clause, 2) alternatively, the Code contained an exception for disputes involving “insurance business” which precluded arbitration of the subject dispute; 3) assuming the exception did not apply, the arbitration clause should not be enforced because only five percent of Gautreaux’s insurance sales involved variable life | insurance products and mutual funds through Pruco; and 4) the non-competition agreement contained in the Career Special Agents Contract entered into between Gautreaux and Prudential was legally unenforceable, rendering the arbitration clause unenforceable.
The trial court held a hearing and rendered judgment denying Prudential’s motion to compel arbitration. In denying the motion to compel arbitration, the trial court appeared to rely on the “insurance business” exception and the lack of contractual privity argument asserted by Gautreaux. Prudential appealed the judgment asserting that the trial court erred in denying the motion to compel arbitration in light of Gautreaux’s express agreement to arbitrate contained in the Form U-4.
DISCUSSION
At issue in this appeal is whether arbitration of Gautreaux’s claim against Prudential should have been compelled by the trial court based on the arbitration clause found in the Form U-4. To decide this issue, we must first briefly review the relevant state and federal law pertaining to arbitration.
The Louisiana Binding Arbitration Law is set forth in LSA-R.S. 9:4201 through 4217. LSA-R.S. 9:4201 provides:
A provision in .any written contract to settle by arbitration a controversy thereafter arising out of the contract ... or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
Additionally, the trial court must grant a stay in any proceeding brought in violation of an arbitration agreement. See LSA-R.S. 9:4202; State, Through Division of Administration v. Algernon Blair, Inc., 415 So.2d 612, 613 (La.App. 3rd Cir.1982).
The Federal Arbitration Act (FAA) is found at 9 U.S.C. §§ 1-14. Section 2 provides:
A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
IsThe FAA also mandates a stay of the trial of any suit brought which is referable to arbitration, “until such arbitration has been had” and mandates that the court issue an order “directing the parties to proceed to arbitration.” 9 U.S.C. §§ 3,4.
It is clear that both the Louisiana Arbitration Law and the FAA provide for the enforcement of agreements to arbitrate. More *924 over, the United States Supreme Court has noted that section 2 of the FAA constitutes a “congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.” Moses H. Cone Memorial Hospital v. Mercury Construction Corporation, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).
Therefore, it is clear that because of the parallel language between the Louisiana and federal arbitration laws, the obvious preemption of the field by Congress, and the absence of Louisiana jurisprudence addressing the issues which are presented to us in this appeal, we must look to federal jurisprudence to guide us. See Grote v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 96-551, p. 4 (La.App. 3rd Cir.11/6/96); 682 So.2d 926, 928.

Presumption of Arbitration

The FAA establishes that as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability. Moses H. Cone Memorial Hospital v. Mercury Construction Corporation, 460 U.S. at 24-25, 103 S.Ct. at 941. A presumption of arbitra-bility exists requiring that whenever the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration. The weight of this presumption is heavy and arbitration should not be denied unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that could cover the dispute at issue. Crochet Equipment Company, Inc. v. Board of County Commissioners of the County of Phillips, Colorado, 20 F.Supp.2d 987, 989 (M.D.La.1998). Louisiana |6courts have recognized the heavy weight of this presumption, noting that as to issues of arbitrability, “even if some legitimate doubt could be hypothesized the Supreme Court requires resolution of the doubt in favor of arbitration.” Grote v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 96-551, p. 4 (La.App. 3rd Cir.11/6/96); 682 So.2d 926, 928.
Gautreaux does not dispute the existence of the arbitration clause in the Form U-4, or the enforceability of arbitration clauses in general. Rather, he contests the applicability of the clause to his particular claim. As previously indicated, Gautreaux contests the standing of Prudential to enforce the arbitration clause of the Form U-4; he asserts his claim is encompassed by the insurance business exception to the mandatory arbitration clause of the Form U-4; and he contends that the arbitration clause should not be enforced against him because his securities sales comprise a low percentage of his total insurance sales.

Standing

Gautreaux- contends that Prudential cannot enforce the Form U-4 arbitration provision because Pruco is the entity listed as the “firm” on the Form U-4 and Pruco is not a party to the suit. We disagree.
Pruco is listed as the “firm name” in item 4 of the Form U-4. However, Prudential is named on the Form U-4 in item 9 as “Broker-Dealers under common ownership or control with [Pruco] the firm named in item 4,” with whom Gautreaux will maintain registration. Thus, the Form U-4 contemplates the potential involvement of Prudential. The fact that Prudential is not a signatory on the form does not mean the arbitration clause cannot be invoked on behalf of Prudential. See In re Prudential, 133 F.3d 225, 229 (3rd Cir.1998), cert. denied, — U.S. -, 119 S.Ct. 55, - L.Ed.2d - (1998).
Moreover, this identical issue was raised in In re the Prudential Insurance Company of America Sales Practice Litigation All Agent Actions, 133 F.3d 225. The In Re Prudential plaintiffs were former employees of Prudential Insurance Company of America who brought suit alleging Prudential had taken adverse employment action against them in retaliation for their refusal to participate in the company’s insurance sales fraud. The In re Prudential plaintiffs had executed a Form *925 U-4 containing the same arbitration provisions as contained in the form executed by 17Gautreaux. In finding that Prudential had standing to invoke the arbitration clause, the United States Third Circuit Court of Appeals stated as follows:
As stated in Form U-4, the plaintiffs agreed to arbitrate any dispute not only with Prueo, but also with “any other person” where the claim itself would be subject to arbitration under the NASD Code. Pursuant to section [10201] of the NASD Code, plaintiffs agreed to arbitrate certain disputes “between or among members and/or associated persons.... ” There is no question that Prudential is a member of the NASD, and the plaintiffs are associated persons within the meaning of the Code. Thus, we conclude ... there is a clear and unequivocal intent to arbitrate claims with third parties such as Prudential, and not just Pruco, to the extent they are eligible for arbitration under § [10101].
In re Prudential, 133 F.3d at 229-30 (footnotes omitted). The court further found that the text and purpose of Form U-4 made it clear that the parties to the agreement intended to benefit such non-signatory, third parties as Prudential.
We agree with our brethren of the United States Third Circuit Court of Appeals that Prudential was an intended beneficiary of the arbitration provision in the Form U-4 executed by Gautreaux. Thus, Prudential has standing to invoke the arbitration clause. We must now address the scope of the insurance business exception to the arbitration clause and the applicability of the clause to plaintiffs claim.

Scope of Arbitration Clause and Insurance Business Exception

There is no dispute that the subject claim is employment in nature. All of Gau-treaux’s causes of action stem from Prudential’s termination of Gautreaux’s employment and Prudential’s alleged interference with Gautreaux’s business. Thus, Prudential contends that the arbitration provision governs the subject dispute over employment because the Code requires arbitration of “any dispute, claim or controversy ... arising out of the employment or termination of employment of association person(s) with any member.” Gautreaux argues that his claim is excepted from the arbitration requirement because it is a dispute “involving the insurance business of any member which is also an insurance company.” We must decide whether the insurance business exception is applicable.
The United States Third Circuit Court of Appeals also addressed this issue in In re Prudential, 133 F.3d 225, and concluded that in light of the heavy presumption in favor of arbitration, the insurance business exception did not apply where an employment dispute required resolution of an insurance business issue.
IsThe In re Prudential plaintiffs, like Gau-treaux in the present case, asserted various state violations which were employment, contractual and tortious in nature, all based on the termination of their employment with Prudential. However, in the In re Prudential case, there were underlying allegations of insurance sales fraud, which allegations would necessarily implicate the legality of certain insurance practices. In deciding that the insurance business exception did not apply, the In re Prudential court stated in pertinent part as follows:
The language of the Code carves out an exception where the dispute involves the “insurance business of any member.” In these situations, there is a clear intent not to arbitrate but rather to leave the matter within the province of the courts. Less clear, however, is the coverage of this exception, as several ambiguities immediately arise in the clause’s interpretation. For example, it is not clear whether the business of insurance exception applies to employment related disputes, to disputes in connection with a member’s business, or to both. More importantly, neither the Code nor NASD by-laws (sic) defines what is meant by the “insurance business” and the intended scope of its coverage.
In re Prudential, 133 F.3d at 232 (footnotes omitted). The court noted that before the 1993 amendment, the Code did not expressly provide for the arbitration of employment *926 related disputes. Thus, pre-1993, it was clear that the insurance business exception only applied to disputes in connection with a member’s business. The stated purpose of the exception was as follows:
to exclude ... disputes on [the] belief that the number of insurance-only claims involving insurance companies is so disproportionately large in relation to their securities business that to include such claims would unduly burden the arbitration system. ... [T]he inclusion of such claims could result in a requirement to arbitrate matters that are intrinsically insurance, that is, matters with respect to which the Association does not believe it should mandate arbitration.
44 Fed.Reg. 75,255 (1979). The In re Prudential court interpreted this stated purpose to mean that “where the dispute is ‘insurance-only’ or even ‘intrinsically insurance’ it falls beyond the scope of arbitration.” However, there was no expression by NASD as to what is meant by an “intrinsically insurance” dispute or a claim that is “insurance only.” In re Prudential, 133 F.3d at 232.
Pursuant to the 1993 amendment, those disputes “arising out of the employment or termination of employment of associated person^) with any member” were also to be arbitrated. The stated intent behind this amendment was to “assure that the arbitration Iflpf industry employment disputes may be compelled at the instance of one of the parties to the dispute.” 58 Fed.Reg. at 39,-070-71. It was the intent of the NASD that the newly proposed clause be read broadly so that employment disputes that also invoked matters “involving public policy issues” would still be arbitrated. 58 Fed .Reg. at 39,071-72. In re Prudential, 133 F.3d at 232-33.
Noting the lack of commentary by the NASD to the potential interplay between the employment clause and the insurance business exception, the In re Prudential court discussed the unanswered question of “whether employment disputes that implicate a member’s insurance business fall under the insurance business exception.” In re Prudential, 133 F.3d at 233. Particularly, the court stated as follows:
[I]t is clear, from both the language of the text and its history, that employment disputes were unequivocally intended to be arbitrated.
‡ ‡ % >J;
[T]he NASD has expressed a clear and unequivocal intent not to arbitrate “insurance-only” or “intrinsically insurance” claims.... [W]e are left wondering to what extent, if any, the desire not to arbitrate “intrinsically insurance” disputes was meant to override the parties’ intention to arbitrate employment disputes — broadly read — when the .controversy implicates both employment and insurance aspects.
* * * * * *
While it is possible to construe the insurance business exception so that an employee’s claim is “intrinsically insurance” or “insurance-only” once the claim requires a resolution of a central insurance question, such an interpretation fails for several reasons. Assuming that the business of insurance exception applies to employment disputes, there is nothing in the NASD Code or its drafting history to indicate the degree of insurance involvement in a dispute that would constitute an “intrinsically insurance” claim.
sH * % * sj« *
[BJecause federal arbitration law requires doubts to be resolved against the resisting party, we need not grope for a rule that would resolve the ambiguity here. Instead, we are not inclined to expand the exception without a clear indication of the parties’ purpose and intended scope of coverage.
We ultimately cannot say with positive assurance that the language of Form U-4 and the NASD Code, as well as their drafting histories, indicate the parties’ desire not to arbitrate employment disputes that require the resolution of an insurance business issue. There is only one clear expression of intent here — that employment disputes are subject to arbitration while “intrinsically insurance” claims are not. Because this court cannot say with certainty what is meant by “intrinsically insur- *927 anee” claims, and whether it embraces employment disputes, our mandate is clear: a presumption in favor of arbitration applies and doubts in construction are resolved against the resisting parties.
In re Prudential, 133 F.3d at 233-34 (footnotes omitted).
| ipFor the same reasons as those expressed by the In re Prudential court, we find that the insurance business exception does not apply to Gautreaux’s claim. Additionally, we note that based on the allegations of insurance sales fraud in the In re Prudential case, resolution of that employment claim would necessarily involve the determination of insurance issues. The same cannot necessarily be said in the present case.' There is only one reference in the record regarding why Gautreaux’s employment with Prudential was terminated — lack of production. We cannot say that this will necessarily raise any issues of insurance law. Thus, we find that the mandatory arbitration provision is applicable to Gautreaux’s claim.
In reaching this conclusion, we reject Gau-treaux’s argument that the arbitration requirement should not be enforced because only five percent of his insurance sales involved securities-related products offered through Pruco. The Code does not provide an exception for those instances where sales of securities-related products do not exceed a certain percent. Again, in light of the heavy-presumption in favor of arbitration, we find that the arbitration clause was applicable to Gautreaux’s claim and the trial court erred in denying the motion to compel.
CONCLUSION
For the reasons set forth in this opinion, the judgment of the trial court is reversed. Prudential’s motion to compel arbitration is granted and action on the petition filed in the Thirty-second Judicial District Court is stayed until such arbitration has occurred. Costs of this appeal are assessed to Gau-treaux.
REVERSED AND RENDERED.

. In 1996, NASD began using a new numbering system that affected all NASD Rules. Thus, we will cite the new rule numbers.