814 So.2d 83 (2002)
Roy Allen SHROYER and Allyson Sloane Shroyer
v.
Claude E. FOSTER, Mary A. Foster, Reda Cockerham, Latter & Blum, Inc., D/B/A C.J. Brown Realtors, Randy Langlois, Diamond Realty, Central Pest Control Company, ABC Insurance Company, Michael Lebas, A Professional Home Inspection Company, Inc. and XYZ Insurance Company.
No. 2001 CA 0385.
Court of Appeal of Louisiana, First Circuit.
March 28, 2002.
*84 Andre' P. Gauthier, Gonzales, Counsel for Plaintiffs/Appellees Roy Allen Shroyer Allyson Sloane Shroyer.
Darlene Simmons, Orlando, FL, Dale M. Maas, Baton Rouge, Counsel for Defendants/Appellees Claude E. Foster, Mary A. Foster.
Jonathan M. Lake, New Orleans, Counsel for Defendants/Appellees Reda Cockerham and C.J. Brown Realtors.
*85 Kevin P. Landreneau, Baton Rouge, Counsel for Defendant/Appellee Central Pest Control Company.
Linda S. Melancon, Gonzales, Counsel for Defendants/Appellants Michael LeBas and A Professional Home Inspection Company, Inc.
Before: GONZALES, KUHN, and CIACCIO[1], JJ.
KUHN, J.
In this appeal, we address whether an arbitration provision in a contract signed by a husband binds his wife. We conclude that when the non-signatory spouse sues for damages based on an alleged breach of that contract, she cannot disavow the arbitration agreement that forms a part of that contract. We also consider whether claims asserted against a principal's employee are subject to the contractual provisions that are applicable to the principal under the terms of the arbitration clause. Because the claims asserted against the employee are based on the same facts as the claims asserted against the principal, we determine the arbitration agreement applies to claims against the employee. In the proceedings below, the party seeking to enforce the arbitration clause filed a declinatory exception raising the objection of prematurity, which was denied by the trial court. We reverse and render judgment sustaining the exception.

FACTUAL AND PROCEDURAL BACKGROUND
Plaintiff's, Roy Allen Shroyer and Allyson Sloane Shroyer, filed suit against defendants, Claude E. Foster and Mary A. Foster. According to the Shroyers' allegations, they purchased a house from the Fosters and later discovered that the house had numerous hidden and latent defects. These alleged defects included roofing and flashing problems, rotten wood in numerous areas of the house, damage to the ceiling and wall of the home resulting from a prior termite infestation, problems with the air conditioning unit, a failed chimney encasement, and structural problems involving the ridge beams. Asserting that the Fosters were aware of these defects but failed to disclose them, the Shroyers seek to have the sale rescinded based on Louisiana's redhibition law.[2]
The Fosters answered, generally denying the allegations of the Shroyers' petition, and filed a third-party demand, naming Michael LeBas and A Professional Home Inspection Company, Inc. ("PHI") as third-party defendants.[3] The Fosters assert that LeBas, acting on behalf of PHI, inspected the house and issued a report based on his findings before they sold the house to the Shroyers. The Fosters claim that if any defects existed, LeBas was negligent in failing to detect them. The Fosters urge that if they are found liable on the principal demand, LeBas and PHI should be held liable to them.
In response, LeBas and PHI filed a dilatory exception raising the objection of prematurity. Therein, they assert that PHI performed its inspection pursuant to an agreement that mandates arbitration of the Fosters' claims. The Fosters opposed the exception urging that they should not *86 be ordered to arbitrate because: 1) Mrs. Foster did not sign the inspection agreement that contains the arbitration clause; 2) LeBas, the inspector, was not a party to the agreement individually, and thus, the claims against him personally would not be subject to arbitration; 3) arbitration of the third-party claim would not resolve the original claim brought by the Shroyers; and consequently, 4) arbitration would not bring about a speedy resolution to the entire matter. When the trial court denied the exception, LeBas and PHI applied to this court for supervisory writs. Recognizing that the judgment denying the exception was an interlocutory judgment subject to immediate appeal, this court denied the writ but remanded the case to the district court with instructions to grant an appeal.[4] This court further ordered a stay of the proceedings in the district court involving LeBas and PHI. Shroyer v. Foster, OO CW 0901 (La.App. 1st Cir.6/02/2000). Following that action, the trial court signed an order of appeal and continued the approaching trial without resetting a trial date.
On appeal, LeBas and PHI argue that the trial court erred in finding that the arbitration clause did not require the Fosters to arbitrate the claims asserted in their third-party demand. LeBas and PHI assert that the trial court improperly considered whether arbitration would affect a speedy resolution of the entire suit in determining whether to enforce the arbitration clause. They contend that Mrs. Foster is bound by the terms of the inspection agreement signed by Mr. Foster, maintaining that the inspection agreement represents a community obligation. Additionally, they argue that the arbitration agreement encompasses the Fosters' claims against LeBas.
The Fosters argue that their third-party claims should not be subject to arbitration because the original demand is not subject to arbitration. They contend that the object of arbitration is the speedy disposition of differences through informal procedures without resort to court action. They assert that because the third-party demand is "inextricably intertwined" with the facts of the original demand, this object will not be served by enforcing the arbitration agreement in this instance. The Fosters maintain that Mrs. Foster is not bound by the terms of the inspection agreement because she did not sign it. The Fosters do not assert any specific argument challenging the allegations that their claims against LeBas should be subject to arbitration.

ANALYSIS
The Louisiana Arbitration Law (LAL) is set forth in La. R.S. 9:4201 through 4217. La. R.S. 9:4201 provides:
A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract ... or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
La. R.S. 9:4202 provides for a stay of proceedings pending arbitration. The failure of a party to arbitrate in accordance *87 with the terms of an agreement may be raised either through a dilatory exception of prematurity or by a motion to stay proceedings pending arbitration. Johnson's, Inc. v. Gers, Inc., 34,268 (La.App.2d Cir.1/24/01), 778 So.2d 740, 743. When the issue of arbitration has been raised by an exception of prematurity, as here, the defendant pleading the exception has the burden of showing the existence of a valid contract to arbitrate. Id.
The Federal Arbitration Act (FAA) is found at 9 U.S.C. §§ 1-16. Section 2 provides:
A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
The FAA further mandates a stay of the trial of any suit brought which is referable to arbitration, "until such arbitration has been had" and mandates that the court issue an order "directing the parties to proceed to arbitration ...." 9 U.S.C. §§ 3, 4.
Thus, both the LAL and the FAA provide for enforcing agreements to arbitrate. Louisiana has a strong public policy that favors the enforcement of these arbitration clauses. Thomas v. Desire Community Housing Corp., 98-2097 (La. App. 4th Cir.7/19/2000), 773 So.2d 755, 759; MMR-Radon Constructors, Inc. v. Continental Ins. Co., 97-0159 (La.App. 1st Cir.3/3/98), 714 So.2d 1, 5, writ denied, 98-1485 (La.9/4/98), 721 So.2d 915. Likewise, the United States Supreme Court has noted that section 2 of the FAA constitutes a "congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).
Substantive provisions of the FAA preempt state law and govern all written arbitration agreements in contracts connected to transactions involving interstate commerce. Collins v. Prudential Ins. Co. of America, 99-1423 (La.1/19/2000), 752 So.2d 825, 827. In this matter, however, the record does not contain sufficient evidence for us to determine whether the PHI inspection agreement was connected to transactions involving interstate commerce. Additionally, none of the parties allege that the FAA is controlling. Because we conclude that our determinations regarding the viability and scope of the arbitration clause contained in this agreement would be the same under either the FAA or the LAL, we pretermit the interstate commerce issue. And because the LAL is virtually identical to the FAA, we consider jurisprudence interpreting the FAA in interpreting the LAL. Lakeland Anesthesia, Inc. v. Cigna Healthcare of Louisiana, Inc., XXXX-XXXX, p. 5 (La.App. 4th Cir.2/6/2002), 812 So.2d 695, 2002 WL 264607 *2.

Presumption of Arbitrability
A presumption of arbitrability exists; any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. at 24-25, 103 S.Ct. at 941; Gautreaux v. Prudential Ins. Co. of America, 98-0286 (La.App. 1st Cir.2/19/99), 728 So.2d 921, 924, writ denied, 99-0767 (La.4/30/99), 743 So.2d 205. The weight of this presumption is heavy and the trial court should not *88 deny arbitration unless it can be said with positive assurance that an arbitration clause is not susceptible of being interpreted to cover the dispute at issue. Id. at 924.

Applicability of the Arbitration Clause to Claims Asserted by Mrs. Foster
Although Mrs. Foster did not sign the inspection agreement, appellants submit that the arbitration clause applies to the claims she asserts against them. The inspection agreement was signed by Mr. Foster, as "Client," and by LeBas, as "Inspector" for PHI[5] and includes the following language addressing arbitration:
These services will be rendered by the Inspection Co., and requested and received by the Client(s), with the agreement that all claims or disputes against the Inspection Co. by the Client(s) will be decided by Arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association or The Better Business Bureau. This agreement to arbitrate will be specifically enforceable under the prevailing laws of any court having jurisdiction.
Generally, ordinary contract principles govern the question of who is bound by an arbitration agreement, and a party cannot be required to submit to arbitration any dispute that he has not agreed to submit. See Ciaccio v. Cazayoux, 519 So.2d 799, 802 (La.App. 1st Cir.1987). Also, an arbitration agreement is not typically enforced against someone who did not sign the agreement. Id. at 804. But our scrutiny of the instant case shows that these general propositions of law are inapplicable.
Appellants contend that Mr. Foster incurred a community obligation when he executed the agreement and that Mrs. Foster's third-party claims should be subject to the arbitration clause. La. Civil Code art. 2360 states, "An obligation incurred by a spouse during the existence of a community property regime for the common interest of the spouses or for the interest of the other spouse is a community obligation." La. C.C. art. 1756 defines an obligation as "a legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another, called the obligee. Performance may consist of giving, doing, or not doing something."
During the hearing on the prematurity exception, counsel for the Fosters acknowledged that there was in fact a community regime and that Mrs. Foster knew about the inspection. The Fosters' third-party demand asserts that PHI's home inspection was "made for and on behalf of both third party plaintiff's and the original petitioners" and "was to provide information as to the condition of the house." Thus, we find that Mr. Foster's agreement to arbitrate disputes with the inspection company was an obligation incurred during the existence of the community for the benefit of the community and is properly classified as a community obligation. See Cabibi and Cabibi v. Hatheway, 570 So.2d 104 (La.App. 4th Cir.1990), writ denied, 572 So.2d 91 (La.1991).
The contractual nature of the claim advanced by Mrs. Foster also convinces us that it should be subject to arbitration. Mrs. Foster seeks to assert a claim based on the provisions of the inspection agreement but she does not want to be bound by the provisions of the agreement that require arbitration. We find it would contravene the purposes of the LAL to allow Mrs. Foster to claim the benefits of the *89 inspection agreement and simultaneously avoid its burdens. Thus, we conclude Mrs. Foster's claims are subject to arbitration.[6]
This result is consistent with jurisprudence from other jurisdictions finding non-signatories bound to arbitration agreements where the non-signatory sues to enforce the provisions of a contract that contains the arbitration language. The courts have found that when a party seeks to enforce the provisions of a contract, that party must accept all of the terms of the contract. The party cannot have it both ways; he cannot rely on the contract when it works to its advantage and then repudiate it when it works to his disadvantage. See In re FirstMerit Bank, 52 S.W.3d 749, 755-56 (Tex.6/14/2001); Infiniti of Mobile, Inc. v. Office, 727 So.2d 42, 48 (Ala.1/8/99); Ex parte Dyess, 709 So.2d 447, 451-452 (Ala.10/24/97); American Ins. Co. v. Cazort, 316 Ark. 314, 322-23, 871 S.W.2d 575, 579-580 (3/14/94); A.L. Williams & Associates, Inc. v. McMahon, 697 F.Supp. 488, 494 (N.D.Ga.9/6/88). Accordingly, the trial court erred in denying the dilatory exception of prematurity with respect to the claims asserted by Mrs. Foster.

Application of the Arbitration Clause to Claims asserted against LeBas
Although the arbitration clause does not specifically reference claims against LeBas, appellants argue that the Fosters' claims against LeBas are within its scope. The agreement provides that all claims or disputes against the inspection company will be decided by arbitration. Appellants urge that because the contract names LeBas as an inspector and states that all inspectors are employees of PHI and because PHI can be held vicariously liable for LeBas's actions, the claims against LeBas should be subject to arbitration. The Fosters raise no rebuttal argument on this point.
Based on the allegations presented, we conclude that the Fosters' claims against LeBas are within the scope of the arbitration clause. According to the Fosters' third-party demand, the claims against LeBas arise under the same facts as the claims against PHI. Because PHI can act only through its employees, we find that the actions of its employees, while acting within the course and scope of their employment, are covered under the terms of the arbitration clause. The strong public policy favoring arbitration and analogous jurisprudence support this conclusion. See Collins v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 561 So.2d at 955-956; Folkland v. Thomson McKinnon Securities, Inc., 484 So.2d 310 (La.App. 3d Cir.1986); Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, 7 F.3d 1110, 1121 *90 (3d Cir.1993); Thomas v. A.R. Baron & Co., Inc., 967 F.Supp. 785, 789 (S.D.N.Y.6/3/97). Thus, the trial court erred in denying the exception raising the objection of prematurity in relation to the claims against LeBas.

Application of the Arbitration Clause to the Fosters' Third Party Demand
Finally, appellants assert that in determining whether to enforce the arbitration agreement, the trial court erred in considering: 1) whether arbitration would promote a speedy resolution of all of the claims, and 2) whether arbitration of the third-party claim would resolve the original demand. The Fosters counter with the general argument that the facts of the third-party demand are inextricably intertwined with the facts of the Shroyers' original demand and should not be subject to arbitration.
Historically, as an exception to the broad pro-arbitration policy embodied in the FAA, some federal courts recognized the intertwining doctrine, finding that a district court could properly deny a stay pending arbitration when arbitrable issues were inextricably interwoven with nonarbitrable claims. See discussion addressing those authorities in Tenneco Resins, Inc. v. Davy International, AG, 770 F.2d 416, 422 (5th Cir.1985). Since then, the United States Supreme Court has rejected the intertwining doctrine in Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 217, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985), finding that the FAA requires district courts to compel arbitration of pendent arbitrable claims even where the result would be possibly inefficient maintenance of separate proceedings in different forums.
We have not discovered any state jurisprudence addressing this intertwining doctrine. Nevertheless, looking to the federal jurisprudence as guidance and recognizing again this state's broad pro-arbitration policy, we conclude that the Fosters' third-party demands are subject to arbitration. We reach this conclusion despite the connexity between the arbitrable claims asserted in the third-party demand and the non-arbitrable claims asserted by the Shroyers in their original demand.
For the above reasons, we conclude that appellants have satisfied their burden of showing the existence of a valid agreement to arbitrate that applies to the Fosters' claims against PHI and LeBas. Thus, the trial court's judgment denying appellants' dilatory exception raising the objection of prematurity is reversed. The exception is hereby granted and the Fosters' claims against PHI and LeBas are dismissed. Costs of this appeal are assessed to defendants-appellees, Claude E. Foster and Mary A. Foster.
REVERSED AND RENDERED.
NOTES
[1] The Honorable Philip C. Ciaccio, Judge (retired), Fourth Circuit Court of Appeal, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The Shroyers also named as defendants the listing agent and listing real estate firm involved with the sale of the property. These parties are not involved in this appeal.
[3] Central Pest Control Company, another party who is not involved in this appeal, was also named as a third-party defendant.
[4] Although an order compelling arbitration is not appealable, an order denying arbitration has been found to be appealable. See Collins v. Prudential Insurance Company of America, 99-1423 (La.1/19/2000), 752 So.2d 825, 830; Stadtlander v. Ryan's Family Steakhouses, Inc. 34,384 (La.App.2d Cir.4/4/2001), 794 So.2d 881, 884-885, writ denied, 01-1327 (La.6/22/2001), 794 So.2d 790.
[5] The Fosters do not challenge that LeBas had authority to sign on behalf of PHI.
[6] We find the instant case distinguishable from Ciaccio v. Cazayoux, 519 So.2d 799 (La. App. 1st Cir.1987), because it involves a contractual claim rather than a tort claim. In Ciaccio, this court held that a non-signatory husband was not bound by the terms of an arbitration agreement that had been signed by his wife when she sought medical treatment. Following the deaths of their newborn children, both husband and wife advanced wrongful death and survival actions against physicians and other health care providers. When the defendant physicians sought to enforce the arbitration agreement, this court found that only the wife was bound by the agreement. In Ciaccio, the non-signatory husband was advancing tort claims; he did not need to rely on the terms of the contract containing the arbitration provision to advance his claims. See Fleetwood Enterprises, Inc. v. Gaskamp, 280 F.3d 1069, 1074 (5th Cir.2002). Additionally, we note that in Ciaccio there was no obligation incurred for the "common interest of the spouses or for the interest of the other spouse" as contemplated by La. C.C. art. 2360. Thus, there was no basis to subject the husband to the arbitration agreement signed by his wife.